UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISMAEL RODRIGUEZ,<br><br>Defendant. | Case No. 1:19-cr-00133-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is the Government's Motion for Reconsideration (Dkt. 40) of the Court's July 9, 2020 Memorandum Decision and Order Granting in Part and Denying in Part Defendant Ismael Rodriguez's Motion to Suppress ("Suppression Order") (Dkt. 39). Having review the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons explained below, the Court DENIES the Motion.

# II. BACKGROUND

The facts of this case are well known to the parties and are set forth in detail in the Court's Suppression Order. Relevant to the instant Motion for Reconsideration, the Suppression Order granted Rodriguez's Motion to Suppress to the extent he sought

suppression of contraband located on his person.[1] The Court denied suppression of evidence located inside of Rodriguez's car. The Court issued the Suppression Order after the Motion to Suppress was fully briefed, and after an evidentiary hearing was held on May 27, 2020. Following the evidentiary hearing, counsel for the Government and for Rodriguez also submitted closing arguments via simultaneously filed briefs. Dkt. 37; Dkt. 38.

In its Supplemental Brief in Opposition to Defendant's Motion to Suppress ("Closing Brief") the Government argued evidence officers found in Rodriguez's pockets should be admitted under the inevitable discovery doctrine. Dkt. 37. The Government suggested officers would have inevitably transported Rodriguez to the police station for a drug recognition evaluation and, to do so, would have searched Rodriguez's person, even if officers hadn't discovered contraband on Rodriguez's person through their unlawful expansion of a search executed pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Id*, at 3. The Government seeks reconsideration of the Court's rejection of this theory and suggests the Court either misconstrued or ignored the Government's inevitable discovery argument. Dkt. 40, at 2 n. 2; Dkt. 43, at 2. The Government requests that the Court consider whether a de facto arrest[2] for driving under the influence was inevitable and would have inevitably led to discovery of the items in Rodriguez's pockets. Dkt. 40, at 2.

---

[1] The Court also suppressed statements Rodriguez made to the police on the day of and the day after his arrest. Dkt. 39, at 21–23, 39–41. The Government does not seek reconsideration of this portion of the Suppression Order.

[2] The Supreme Court has held a *Terry* stop becomes so intrusive as to constitute a de facto arrest when a suspect is removed from the site of the investigation to the police station. *Dunaway v. New York*, 442 U.S.

Given the potential ambiguity in distinguishing between the investigation that actually occurred in this case and an investigation that purportedly would have occurred had officers not illegally searched Rodriguez's pockets, a brief timeline is necessary. As highlighted in the Suppression Order, it is undisputed that Corporal Douglas Kern lawfully stopped Rodriguez and initiated a *Terry* search due to Rodriguez's suspicious conduct. Dkt. 39, at 12. Similarly, it is undisputed that Officer William Koho went beyond the legitimate scope of *Terry* by reaching directly into Rodriguez's right front and back pockets. *Id*. Koho discovered a large roll of cash in Rodriguez's right front pocket, which he showed to Kern. Kern then obtained Rodriguez's consent to search his left pocket and pulled out a large bag of heroin. Upon viewing the heroin, Kern arrested Rodriguez for possession of a controlled substance. Dkt. 36, at 40:13–21

The Court determined Rodriguez's consent to search his left pocket was tainted by the illegal search of his right pocket and suppressed the heroin. Dkt. 39, at 15–16. However, after Rodriguez was arrested, officers later conducted a canine sniff of his vehicle and obtained a positive alert. Officers searched the car and discovered a stolen firearm and several pounds of methamphetamine. Although Rodriguez moved to suppress such evidence, the Court determined the canine sniff was not the fruit of the illegal search, and,

---

200, 216 (1979); *see also Florida v. Royer*, 460 U.S. 491, 503 (1983) (finding an investigative detention became so intrusive as to constitute a de facto arrest when police moved the suspect from an airport concourse to a DEA interrogation room).

even if it was, that the canine sniff would have been inevitably occurred absent the illegal search.[3] *Id*. at 23–32.

The Government's inevitable discovery argument involves a different timeline. Under its theory, even if the heroin had been not discovered through the illegal expansion of *Terry*, Rodriguez's suspicious behavior gave Koho probable cause to transport Rodriguez to the police station for a full drug recognition evaluation. Dkt. 37, at 3. The Government argued that to transport him to the station, officers would have handcuffed Rodriguez, searched him, and placed him in the back of the patrol vehicle. *Id*. Importantly, the Government suggested officers would have searched Rodriguez incident to his de facto arrest for driving under the influence. *Id*. at 4. Although the Government contended officers would also have called for a canine unit and searched Rodriguez's vehicle, it argued the heroin would have been discovered through a search incident to Rodriguez's arrest for driving under the influence, and not through a search incident to arrest for possession of the contraband located in his car. *Id*.; *see also* Dkt. 39, at 33–34. Thus, under the Government's theory, Rodriguez would have been transported to the police station and his person searched *before* the canine sniff and search of his vehicle.

### III. LEGAL STANDARD

While the Federal Rules of Criminal Procedure do not explicitly address motions for reconsideration, the Ninth Circuit has held parties may seek reconsideration in the

---

[3] The latter conclusion was supported by Kern and Koho's testimony during the evidentiary hearing. *Id*. at 31–32.

criminal context. *United States v. Martin*, 226 F.3d 1042, 1047 n. 7 (9th Cir. 2000). In both civil and criminal cases, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *United States v. Rodriguez-Vasquez*, 4. F. Supp. 3d 1146, 1156 (N.D. Cal. 2013).

Generally, reconsideration is appropriate if the district court is presented with newly discovered evidence, committed clear error, the initial decision was manifestly unjust, or if there is an intervening change in controlling law. *Rodriguez-Vasquez*, 4 F. Supp. 3d at 1156 (quoting *School Dist. No. 1J, Multnomah Cty. Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993)). In addition, a district court has inherent authority to modify, alter, or revoke non-final orders. *United States v. Villapudua-Perada*, 896 F.2d 1154, 1156 (9th Cir. 1990).[4]

## IV. ANALYSIS

The Government contends that the Court ignored or misunderstood the Government's argument that Rodriguez would have been inevitably searched because officers had probable cause to transport him to the police station for a full drug recognition evaluation—a de facto arrest. The Government suggests that this is the type of unusual circumstance in which a court should reconsider or clarify its order. However, the Court

---

[4] Allowing reconsideration of non-final orders—such as orders issued on motions to suppress—furthers the policy favoring judicial economy. *United States v. Jones*, 608 F.2d 386, 390 n. 2 (9th Cir. 1979). The Supreme Court has indicated that it prefers reconsideration over appeal because plenary consideration of an issue by an appellate court ordinarily requires more time than is required if district courts have the opportunity to promptly correct their own alleged errors. *United States v. Dieter*, 429 U.S. 6, 8 (1976).

both addressed and rejected the Government's inevitable discovery argument in its Suppression Order.

Because officers would not have had probable cause to transport Rodriguez to the police station for a drug recognition evaluation absent the discovery of heroin in his pocket or any further investigation, a de facto arrest would not have been lawful had it inevitably occurred shortly after Rodriguez was stopped. Thus, the Court held "[w]hile officers had reasonable suspicion—independent from the illegal search—to stop Rodriguez and to remove him to the back of Koho's police car while they ran a canine around his vehicle, they lacked probable cause to take him to the police station until they searched his vehicle after obtaining the positive canine alert." Dkt. 39, at 35. The Government suggests the Court only held that officers lacked probable cause to arrest Rodriguez for possessing controlled substances until they searched his vehicle, and not that they lacked probable cause to take Rodriguez to the police station for a full drug recognition evaluation. The Court's use of the phrase "they lacked probable cause to take him to the police station" was a direct reference to the Government's theory that to obtain further evidence of the crime of driving under the influence, "Officer Koho would have *transported Defendant to the police station* for a full drug recognition evaluation." Dkt. 37, at 3 (emphasis added).

The Court specifically stated that the Fourth Amendment does not permit the involuntary removal of a suspect to a police station and his detention there for investigative purposes absent probable cause or judicial authorization. Dkt. 39, at 34 (quoting *Hayes v. Florida*, 470 U.S. 811, 815 (1985). The Court further held that while "officers had reasonable suspicion to order a canine sniff independent from the heroin, they lacked

probable cause to arrest Rodriguez until after they searched his vehicle and located the contraband therein." *Id*. Such findings were an express holding that officers lacked probable cause to remove Rodriguez to the police station for a full drug recognition evaluation at the time the Government suggested they would have done so, *i.e*., before the canine sniff and before officers discovered the contraband in Rodriguez's car.

The Court explained that because the Government argued that "Rodriguez would have inevitably been taken to the police station and searched *without probable cause*, rather than that he would have been arrested and searched because officers would have obtained probable cause to arrest him through the search of his vehicle, the Court declines to further address the issue of whether officers would have inevitably discovered the heroin on Rodriguez's person in a search incident to arrest due to the contraband discovered in his vehicle." Dkt. 39, at 35 (emphasis in original). The Court perhaps could have more clearly stated that while the Government suggested in its Closing Brief that the officers  had probable cause to take Rodriguez to the police station for a drug recognition evaluation, transport to the police station would have been without probable cause at the time the Government contended it would have occurred. To the extent this finding was unclear, the Court clarifies that officers lacked probable cause to transport Rodriguez to the police station before conducting any additional investigation in the field or discovering contraband in his car.

The Government does not set forth any factual disagreement with the Court's finding that officers lacked probable cause to take Rodriguez to the police station. Nor does the Government identify a single case—in its initial briefing on the Motion to Suppress,

Closing Brief, Motion for Reconsideration, or Reply in support of the Motion for Reconsideration—holding that facts similar to those in this case established probable cause for a DUI arrest. *See generally*, Dkt. 23, Dkt. 37; Dkt. 40; Dkt. 43.[5]

Given the factors highlighted in the Suppression Order (Dkt. 39, at 26–32), the officers obtained reasonable suspicion that Rodriguez was under the influence of an intoxicant during the lawful portion of the *Terry* stop. Significantly, where officers have reasonable suspicion of a crime, the investigative methods employed to confirm such suspicion "should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "Field sobriety tests are the least intrusive means of effectively verifying or dispelling an officer's reasonable suspicion" of the crime of driving under the influence.[6] *State v. Ferreira*, 988 P.2d 700, 709 (Idaho Ct. App. 1999). Field sobriety tests are "designed and administered to avoid the shortcomings of casual observation and are premised upon the

---

[5] In its Closing Brief, the Government cited *United States v. Baron*, 860 F. 2d 911, 914–15 (9th Cir. 1988) in support of its inevitable discovery argument. In *Baron*, the Ninth Circuit determined officers had probable cause to arrest the defendant for possession of drugs. Both the crime and the facts at issue in *Baron* are entirely distinguishable from those here. DEA agents in *Baron* intercepted a package containing a large amount of cocaine, along with four stuffed animals, from the United Parcel Service. The agents replaced most of the cocaine with a cocaine substitute, sewed an electronic beeper tracking device into one of the stuffed animals, and arranged a controlled delivery of the package to the addressee, Joseph Paliafito. *Id.* at 912. The Ninth Circuit held DEA agents had probable cause to arrest defendant because they had seen her two days prior with Paliafito and another co-defendant; Paliafito had gone to his apartment immediately after the package was delivered and then promptly to defendant's apartment after opening the package; defendant was with the co-defendant when the co-defendant apparently recognized officers surveilling Paliafito's apartment and alerted Paliafito to the fact that they were being watched; and defendant was in Paliafito's apartment when the beeper suddenly stopped transmitting because it was destroyed. *Id.* at 917. Clearly, none of these factors are analogous to the circumstances at issue in this case.

[6] A canine sniff is also much less intrusive than a typical search. *United States v. Place*, 462 U.S. 696, at 707 (9th Cir. 1983). However, as noted, the Government didn't suggest that officers would have conducted a canine sniff of Rodriguez's vehicle prior to removing him to the station for a drug recognition evaluation.

MEMORANDUM DECISION AND ORDER - 8

relationship between intoxication and the externally manifested loss of coordination it causes." *Id.* (citation omitted). It is undisputed that the officers did not administer a field sobriety test in this case. Nor did the Government offer any testimony to explain why a field sobriety test was not or could not have been administered prior to transporting Rodriguez to the station for a full drug recognition evaluation. The Court thus rejects the Government's contention that Rodriguez would have been lawfully transported to the station in the absence of any less-intrusive means to dispel officers' reasonable suspicion.

Further, it is important to note that the precise issue before the Court was not whether transport to the police station would have been constitutional, but instead whether officers would have inevitably transported Rodriguez to the police station for a drug recognition evaluation under the inevitable discovery doctrine. To be sure, officers did not transport Rodriguez to the police station for a full drug recognition evaluation. Instead, they arrested Rodriguez for possessing heroin they discovered through an unconstitutional search of his pockets. While the Government argued officers would have inevitably conducted a full drug recognition evaluation at the police station even if they had not discovered the heroin, this conclusion was not supported by the record.

First, as the Court explained in the Suppression Order, the inevitable discovery doctrine allows introduction of illegally obtained evidence "if the government can show by a preponderance of the evidence that the tainted evidence would have inevitably been discovered through lawful means." Dkt. 39, at 10 (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989)). The Supreme Court has instructed that the inevitable discovery doctrine cannot rely on "speculative elements," and that its application

must turn "on demonstrated historical facts capable of ready verification or impeachment[.]" *Nix v. Williams*, 467 U.S. 431, 44 n. 5 (1984). During the evidentiary hearing, the Government did not offer testimony to establish that transport to the police station was required under the procedures of the Nampa Police Department. There was no reference to any specific policy of the Nampa Police Department that requires transport to the police station for a drug recognition evaluation.

Second, as Rodriguez argued, in Idaho, arrest for misdemeanor offenses such as driving under the influence is discretionary. Dkt. 38, at 7 (citing Idaho Code § 19-603); *see also Olguin v. City of Burley*, 810 P.2d 255, 258–59 (1991) (stating Idaho law does not require officers to arrest for driving under the influence). The Government did not introduce any evidence to suggest that the Nampa Police Department somehow limits this discretion. Application of the inevitable discovery doctrine under such circumstances would have been inappropriate. *United States v. Bonner*, 393 F. Supp. 3d 1063, 1075 (D. Or. 2019) ("Because the Court finds that the police had discretion in determining how to respond to Dollar's request for repossession of the rental car, the Court rejects the Government's premise for why the discovery of evidence was inevitable.").

In sum, officers lacked probable cause to transport Rodriguez to the police station in the absence of discovering the heroin or conducting any further investigation, and the Government did not show that the evidence on Rodriguez's person would have been discovered if the investigation had unfolded in a drastically different fashion. The Court accordingly rejects the Government's argument that the heroin would have been inevitably

discovered if Rodriguez had been transported to the police station for a full drug recognition evaluation and denies the Motion for Reconsideration.

## V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Government's Motion for Reconsideration (Dkt. 40) is **DENIED**.

DATED: July 29, 2020

David C. Nye
Chief U.S. District Court Judge